IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GNC FRANCHISING LLC and GENERAL
NUTRITION CORPORATION,                          Civil Action No. 06-191

              Plaintiffs,                       Arthur J. Schwab
                                                United States District Judge

       v.

NESTOR SALA,

              Defendant.

**ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING MOTION TO DISMISS FOR WANT
OF PERSONAL JURISDICTION OR CHANGE OF VENUE
AND MOTION FOR TRANSFER FOR FORUM NON CONVENIENS**

On March 10, 2006, this Court filed a Memorandum Opinion in Support of its Order of
March 9, 2006 denying defendant's motion to dismiss for lack of jurisdiction and improper
venue, or to transfer venue for forum non conveniens.  These additional findings of fact and
conclusions of law supplement that memorandum opinion.

**I.  <u>FINDINGS OF FACT</u>**

**A.  <u>Parties</u>**

1.      GNC is a Pennsylvania limited liability company with its principal place of
business at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

2.      General Nutrition Corporation is a Pennsylvania corporation with a principal
place of business at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

3.      GNC, as the result of the expenditure of time, skill, effort and money, has
developed and owns a unique and comprehensive system relating to the opening and operation of

retail nutrition, health and/or fitness stores ("General Nutrition Centers") which sell, among other things, vitamin and mineral supplements, sports nutrition products, herbs, health foods, cosmetics and miscellaneous health care products, diet products, sports accessories, fitness products and specialty workout apparel and which are staffed by employees dedicated exclusively to serving customers for these products and services ("the System").

4.      GNC identifies the System by means of certain trademarks, trade names, service marks, logos, emblems and other indicia of origin, including, but not limited to the GNC®, GENERAL NUTRITION CENTER®, and GNC LIVE WELL® marks, and such other names, service marks, and trademarks as are designated by GNC for use in the System ("the Proprietary Marks").

5.      GNC awards franchises to carefully screened and qualified individuals and/or business entities to operate GNC General Nutrition Center® stores on a nationwide basis and pursuant to the terms of a comprehensive franchise agreement.

6.      Defendant Nestor Sala ("Defendant Franchisee") is an adult individual currently residing at 2934 Capital Park Drive, Tallahassee, Florida 32301.

## B. Contractual Relationship in General

7.      On December 4, 1997, Defendant Franchisee executed a franchise agreement with GNC to operate a store located in the San Pablo Family Center in Jacksonville, Florida (the "Franchise Agreement").  By addendum dated March 27, 1998, the location of Defendant's store was changed to the Bradfordville Shopping Center in Tallahassee, Florida (the "Tallahassee Store").   On September 8, 1998, Defendant Franchisee executed a sublease with General Nutrition Corporation with respect to the Tallahassee Store.

8.    The Franchise Agreement provides, with respect to the Proprietary Marks, *inter alia*, that:

> Franchisee expressly understands and acknowledges that:
>
> As between the parties hereto, [GNC] has the exclusive right and interest in and to the Proprietary Marks and the goodwill associated with and symbolized by them.
>
> Franchisee's use of the Proprietary Marks pursuant to this Agreement does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, and all goodwill arising from Franchisee's use of the Proprietary Marks in its franchised operation under the System shall inure solely and exclusively to [GNC's] benefit, and upon expiration or termination of this Agreement and the license herein granted, no monetary amount shall be assigned as attributable to any goodwill associated with Franchisee's use of the System or the Proprietary Marks.

9.    The Franchise Agreement provides that Defendant Franchisee shall refrain from engaging in any act injurious or prejudicial to the goodwill associated with the Propriety Marks and the GNC System.

### C. Contractual Provisions Regarding Termination and Injunction

10.    The Franchise Agreement provides that "Franchisee acknowledges that Franchisee's violation of the terms of this Section XVII would result in irreparable injury to [GNC] for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance, of, and agrees to pay all court costs and reasonable attorney's fees incurred by Franchisor in obtaining an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section XVII."  (GNC Appendix, Exhibit 1, Franchise Agreement at § XVII.G).

11.    With respect to termination, the Franchise Agreement provides that GNC has the right to terminate the agreement immediately and without an opportunity to cure if Defendant

"fails to comply with the covenants in [Section XVII.B.]" of the Franchise Agreement." (GNC Appendix, Exhibit 1, Franchise Agreement at § XV.B.6).

12.     The Franchise Agreement provides that upon termination of the Franchise Agreement, Defendant Franchisee is obligated to immediately cease operating the business franchised to him by GNC; immediately cease to use any of the Proprietary Marks licensed under the Franchise Agreement; immediately turn over to GNC all manuals and related documents owned by GNC and used in the operation of the GNC store; and grant GNC the right to purchase all inventory and merchandise from the store. (GNC Appendix, Exhibit 1, Franchise Agreement at § XVI).

13.     The Franchise Agreement provides that in the event GNC obtains injunctive relief to obtain Defendant's compliance with Section XVI, Defendant Franchisee is obligated to pay all costs and expenses, including reasonable attorney's fees, incurred by GNC. (GNC Appendix, Exhibit 1, Franchise Agreement at § XVI.G).

### D.   Contractual Provisions Regarding Choice of Law, Jurisdiction, Venue, and Waiver of Forum Non Conveniens

14.     The Franchise Agreement provides:

> This Agreement takes effect upon its acceptance and execution by Franchisor, and shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania, which laws shall prevail in the event of any conflict of law. . . .

(GNC Appendix, Exhibit 1, Franchise Agreement at § XXVI.A).

15.     The Franchise Agreement provides:

> The parties agree that any action brought by prospective Franchisee or Franchisee against Franchisor in any court, whether federal or state, shall be brought only within the Commonwealth of Pennsylvania in the judicial district in which Franchisor has its principal place of business; and the parties waive all questions of personal jurisdiction or venue for the

purposes of carrying out this provision. The parties also agree that the Franchisor may bring any action against Franchisee in any court, whether federal or state within the Commonwealth of Pennsylvania. If Franchisor brings an action against Franchisee in any state or federal court located within the Commonwealth of Pennsylvania in the judicial district in which Franchisor has its principal place of business, Franchisee accepts generally and unconditionally the jurisdiction and venue of the aforesaid courts and waives any defense of forum non conveniens.

(GNC Appendix, Exhibit 1, Franchise Agreement at § XXVI.B).

## II.  CONCLUSIONS OF LAW

### A.  Jurisdictional Background

1.      A federal court exercising diversity jurisdiction should apply the choice of

law rules of the forum state, here Pennsylvania. *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487, 496 (1941); *Bishop v. GNC Franchising LLC*, 403 F.Supp.2d 411, 415

(W.D. Pa. 2005)  (Schwab, J.).

2.      Pennsylvania courts have adopted Section 187 of the Restatement

(Second) of Conflicts of Law, which honors contractual choice of law clauses unless

either (a) the chosen state has no substantial relationship to the parties or the transaction

and there is no reasonable basis for the parties' choice, or (b) application of the law of the

chosen state would be contrary to a fundamental policy of a state which has a materially

greater interest than the chosen state in the determination of the particular issue.  *Bishop*,

403 F.Supp.2d at 415; *Cottman Transmission Systems, Inc. v. Melody*, 869 F.Supp. 1180,

1184 (E.D.Pa. 1994).  *See Carrick v. Zurich-American Ins. Group*, 14 F.3d 907, 909 (3d

Cir. 1994) (*citing Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964))

(Pennsylvania's choice of law analysis, applicable in both contract and tort cases,

combines the "significant relationship test" set forth in Restatement (Second) of Conflict

of Laws, and the "government interest analysis.").

3.      Pennsylvania has a substantial relationship to the parties.   GNC and

General Nutrition Corporation both have their principal place of business in

Pennsylvania.  The Franchise Agreement and Sublease, therefore, are contracts between

Defendant and Pennsylvania-based entities.  *Id.* at 416 (finding Pennsylvania has a

substantial relationship to GNC and another franchisee and finding that GNC has an

interest in uniformity in dealings with franchisees located in numerous states across the country); *Hopkins v. GNC Franchising, Inc.*, slip opinion, No. 05-1510 (W.D. Pa. January 13, 2006) (Schwab, J.) (same).

### B.  Choice of Law

4.     Defendant Franchisee has not demonstrated that Florida has a materially greater interest than Pennsylvania in determining the issues in dispute.

5.     Further, the application of Pennsylvania law would not violate any fundamental policy of Florida as the Florida Franchise Act, F.S. § 817.416 applies only to representations connected to selling or establishing a franchise and does not relate to the claims asserted by GNC.  *Id*.

6.     Additionally, Florida courts routinely enforce contractual choice of law provisions in franchise disputes indicating no public policy of Florida is implicated by the enforcement of such provisions.  *See e.g., Midland Management LLC v. Burger King Corp.*, 217 F.Supp.2d 1261, 1264 (S.D. Fla. 2001); *Burger King Corp. v. Weaver*, 798 F.Supp. 684, 687 (S.D. Fla. 1992) ("When the parties to a contract have indicated their intention as to the law which is to govern, [the contract] will be governed in accordance with the intent of the parties.").

7.     Accordingly, this Court finds that Pennsylvania law applies to the parties' dispute.

### C.  Jurisdiction and Venue

8.     The Franchise Agreement provides that GNC may bring an action against Defendant Franchisee in any court, federal or state, located in the Commonwealth of Pennsylvania.  Additionally, if GNC brings a claim against Defendant Franchisee in court

located in Pennsylvania within the judicial district where GNC has its principal place of business, Defendant Franchisee unconditionally accepts the jurisdiction and venue of the court. (GNC Appendix, Exhibit 1, Franchise Agreement).

9.     GNC's principal place of business is in Pittsburgh, Pennsylvania and within the judicial district in which this Court sits, so this Court is a "court located in Pennsylvania within the judicial district where GNC has its principal place of business" for purposes of the Franchise Agreement.

10.    In light of the terms of the Franchise Agreement, and for the reasons set forth below, this Court concludes that both jurisdiction and venue in this Court are proper because defendant had substantial and continuous business contacts with plaintiff in the forum state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (specific jurisdiction exists where defendant has sufficient minimum contacts with the forum state such that a defendant should reasonably anticipate being "haled into court" in the forum state); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ("constitutional touchstone" is whether defendant purposefully established minimum contacts with forum state).

## C. Forum Selection Clause

11.    In federal court, the effect to be given a contractual forum selection clause is determined by federal, not state law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995).

12.     "When parties voluntarily agree to submit to suit in a given venue, the courts will generally not disturb that choice." *Relm Wireless Corp. v. C.P. Allstar Corp.*, 265 F.Supp.2d 523, 524 (E.D. Pa. 2003); *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*,

17 F.Supp.2d 317, 320 (D.N.J. 1998) ("Defendant, however, has waived any opposition to improper venue when it agreed to the forum selection clause in the Master Equipment Lease.")

13.     Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

14.     A forum selection clause is unreasonable only if the defendant can make a strong showing either that the forum selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court" or that the clause was procured by fraud or overreaching. *Id.*

15.     To set aside a forum selection clause on the grounds of fraud or overreaching, Defendant must show that "inclusion of *that clause* in the contract was the product of fraud or coercion." *Hoffer v. InfoSpace.com, Inc.*, 102 F.Supp.2d 556, 563 (D.N.J. 2000) (emphasis added).   Defendant has presented no evidence showing the inclusion of the forum selection clause in the Franchise Agreement was the product of fraud or coercion.

### D.  Motion for Change of Venue and Contractual Waiver of Defense of Forum Non Conveniens

16.     Section 1404(a) of Title 28 of the United States Code ("For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.") is the appropriate statutory provision for transfer of an action where, as here, jurisdiction is proper in both the original and the requested forum. *Jumara*, 55 F.3d at

878. A forum selection clause is prima facie valid "and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

17.     While Defendant Franchisee alleges that the U.S. District Court for the Western District of Pennsylvania is not the most convenient forum, the proffered evidence is not sufficient to establish that litigation in this Court would be "so gravely difficult and inconvenient" that he will for all practical purposes be deprived of his day in court, nor sufficient to establish the enforcement of the forum selection clause would be unreasonable as to Defendant Franchisee under the circumstances.

18.     Defendant Franchisee argues that the forum selection clause is not enforceable because it was part of a contract offered to Defendant on a "take it or leave it" basis.   Even assuming this is true, this is not a sufficient grounds to refuse enforcement of a forum selection clause.  *See e.g., Mathews v. Rescuecom Corp.*,  2006 WL 414096, at *6 (D. N.J. February 16, 2006)*, citing Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585, 594-95 (1991) (forum selection clause on back of cruise ticket enforceable despite lack of bargaining over the terms of the clause);  *Barbuto v. Medicine Shoppe Int'l, Inc.*, 166 F.Supp.2d 341, 346 (W.D. Pa. 2001) (rejecting argument that forum selection clause was not enforceable as it was part of a "non-negotiated contract of adhesion");  *Union Steel America Co. v. M/V Sanko Spruce*, 14 F.Supp.2d 682, 686 (D.N.J. 1998) ("Union Steel argues that there is no presumption of validity because the forum selection clause at issue is part of an adhesion contract.  This argument has been rejected by the courts which have considered it.").

19.     Accordingly, this Court will enforce the forum selection clause and finds that Defendant Franchisee has unconditionally consented to the exercise of jurisdiction and venue of this Court over Defendant Franchisee in this case and contractually waived any claim of forum non conveniens.  Even in the absence of the forum non conveniens provision, the Court finds that the Western District of Pennsylvania is a convenient and fair place to litigate this matter.


**SO ORDERED** this 13th day of March, 2006.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All counsel of record as listed below

Amy Kerr Parker, Esquire
Gordon W. Schmidt, Esquire
Kevin S. Batik, Esquire
Gerald J. Stubenhofer, Esquire
McGuire Woods
625 Liberty Avenue
23rd Floor, Dominion Tower
Pittsburgh, PA 15222-3142

Martin B. Sipple, Esquire
227 South Calhoun Street
Tallahassee, FL 32301